# In the United States Court of Federal Claims

No. 22-866
(Filed Under Seal: July 3, 2023)
Reissued: July 19, 2023[1]

|  |  |
|---|---|
| KPMG LLP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| DELOITTE & TOUCHE LLP, | ) |
| | ) |
| Defendant-Intervenor. | ) |

*Dominique Casimir*, Blank Rome LLP, Washington, DC, for plaintiff.

*William Porter Rayel*, U.S. Department of Justice, Civil Division, Washington, DC, for defendant.

*David Samuel Cohen*, Cordatis LLP, Arlington, VA, for defendant-intervenor.

**OPINION AND ORDER**

***SMITH*, Senior Judge**

This action is before the Court on the parties' Cross-Motions for Judgment on the Administrative Record. Plaintiff, KPMG LLP ("KPMG"), challenges the decision of the National Reconnaissance Office ("NRO" or "Agency") to award its Combined Finance Support Services ("CFSS") III contract (Solicitation No. NRO000-21-R-0226) to defendant-intervenor Deloitte & Touche LLP ("Deloitte"). *See generally* Complaint, ECF No. 1 [hereinafter Compl.]; *see also* Plaintiff's Motion for Judgment on the Administrative Record, ECF No. 18 [hereinafter Pl.'s MJAR]. Specifically, KPMG asserts the following: (1) NRO unreasonably followed the

---

[1] An unredacted version of this opinion was issued under seal on July 3, 2023. The parties were given an opportunity to propose redactions, and those redactions are included herein.

Government Accountability Office's ("GAO") arbitrary recommendation that NRO consider ███████████████████ ("Mr. H") unavailable to perform the CFSS III contract for KPMG; (2) Deloitte materially misrepresented the availability of Mr. H to perform the CFSS III contract for Deloitte; (3) NRO impermissibly treated KPMG and Deloitte unequally; and (4) Deloitte's proposal was technically deficient.  *See* Compl. at 23–27; *see also* Pl.'s MJAR at 14–40.

In response, defendant argues the following: (1) NRO reasonably followed GAO's rational recommendation to evaluate KPMG's bid without considering Mr. H; (2) NRO did not improperly treat KPMG and Deloitte unequally; (3) Deloitte did not misrepresent Mr. H's availability to perform the CFSS III contract for Deloitte; and (4) Deloitte's proposal was not technically deficient.  *See generally* Defendant's Cross-Motion for Judgment on the Administrative Record and Opposition to Plaintiff's Motion for Judgment on the Administrative Record, ECF No. 23 [hereinafter Def.'s CMJAR].  Similarly, Deloitte argues that the Agency reasonably awarded the contract to Deloitte, arguing much the same as defendant.  *See generally* Defendant-Intervenor's Cross-Motion for Judgment on the Administrative Record and Opposition to Plaintiff's Motion for Judgment on the Administrative Record, ECF No. 22 [hereinafter Def.-Int.'s CMJAR].  For the reasons set forth below, the Court grants KPMG's Motion for Judgment on the Administrative Record and denies defendant's and defendant-intervenor's Cross-Motions for Judgment on the Administrative Record.

## I.     Background

NRO is an agency of the United States Department of Defense ("DOD") and a member of the Intelligence Community.  NRO conducts research and development, acquisition, launch, deployment, and operation of reconnaissance systems and data processing facilities to support the United States Government.  Administrative Record at 920 [hereinafter AR].  KPMG was the incumbent contractor for the CFSS II contract, the antecedent contract to the contract at issue in this case.  Under the CFSS II contract, KPMG provided NRO financial support services, including accounting and finance consulting; accounts payable; audit liaison; auditable financial statement generation; budget execution, tracking, and reconciliation of current, prior, and future year funds; general financial management; internal controls; enterprise funds execution; policy development; posting contractual obligations; property management and accounting; standard general ledger analysis; treasury operations payment and reconciliation functions; and travel processing.  AR 378.

### A.     The CFSS III Solicitation

On August 25, 2021, NRO issued the CFSS III Solicitation—the follow-on to CFSS II—to obtain financial support services, including accounting and finance consulting, accounts payable, auditable financial statement generation, general financial management, policy development, and travel processing.  AR 1, 91.  The Solicitation provided that the period of performance would begin on February 1, 2022, with a two-year base period and two two-year options.  AR 295.  The Solicitation instructed offerors that NRO would select the proposal that

offers the best value to the Government using the trade-off process, weighing the cost area and non-cost area as "approximately equal." AR 453. For the non-cost area, NRO would evaluate five factors: (1) Management; (2) Past Performance; (3) Organizational Conflict of Interest; (4) Intellectual Property; and (5) Security. AR 453. The Management Item Factor has four subfactors: (1) Key Personnel (at issue in this case); (2) Staffing; (3) Management Approach; and (4) Transition Approach. AR 454–55. The Key Personnel subfactor is weighted more than both the Staffing and Management Approach subfactors, which were each weighted more than the Transition Approach subfactor. AR 454.

The Solicitation required NRO to evaluate the Key Personnel subfactor by considering each offeror's ability to provide key personnel who meet the qualifications identified in the CFSS III Statement of Work ("SOW"). AR 454. Per the Solicitation, the Key Personnel standard "is met when . . . [t]he Offeror proposes Key Personnel who meet the experience and education qualifications identified in the CFSS III SOW." AR 454. The SOW required four full-time key personnel: (1) Program Manager; (2) Senior Financial Analyst; (3) Senior Financial Consultant; and (4) Financial Reporting/Financial Statement Team Lead. AR 396. Offerors were required to provide resumes and letters of commitment for each key personnel. AR 418.

The Solicitation provided that NRO would evaluate proposals for minor, major, or significant strengths and weaknesses—as well as deficiencies—for the Management factor. AR 456. NRO was required to assign each offeror a rating for the Management factor and each of its subfactors: (1) Exceptional; (2) Very Good; (3) Good; (4) Satisfactory; (5) Marginal; and (6) Unsatisfactory. AR 456. The Solicitation also required NRO to assign offerors an overall risk assessment informed by risk evaluations across each factor. AR 464. The five overall risk ratings were (1) Low; (2) Moderate-Low; (3) Moderate; (4) Moderate-High; and (5) High. AR 464.

### B. The First Evaluation

On September 30, 2021, three offerors submitted proposals in response to the Solicitation: Sehlke Consulting, LLC ("Sehlke"), KPMG, and Deloitte. AR 482, 1789, 2333. Both KPMG and Deloitte included Mr. H as one of their key personnel.[2] KPMG proposed Mr. H as its senior financial consultant. AR 1805, 1845. At the time of KPMG's proposal, Mr. H was employed by KPMG's subcontractor ▇▇▇▇▇▇▇▇▇▇ ("▇▇▇") and was working for ▇▇▇ on the CFSS II contract as a senior manager. AR 1845. KPMG provided Mr. H's signed letter of intent to work on CFSS III for KPMG. AR 1856. Deloitte proposed Mr. H as its financial reporting/financial statement team lead. AR 2380. Deloitte listed Mr. H as a contingent hire because Deloitte planned to hire him if it won the contract. AR 2360. Deloitte also provided a signed letter of commitment from Mr. H, which stated that Mr. H declared "[his] intent to work on the [CFSS III] contract if awarded to [Deloitte]." AR 2367.

---

[2]   Additionally, Sehlke Consulting, LLC identified ▇▇▇▇▇▇▇▇▇▇▇ as someone it would try to hire if awarded the contract. Administrative Record 515.

On January 11, 2022, Mr. H notified ▮ that he planned to resign. AR 985. On January 14, 2022, ▮ notified KPMG that Mr. H planned to resign and intended to accept a position with Deloitte. AR 983. KPMG and ▮ agreed to work to persuade Mr. H to remain with ▮. AR 983. On January 18, 2022, KPMG's CFSS II program manager ▮ notified Erik N▮, the Source Selection Evaluation Team chair for CFSS III and contracting officer for CFSS II, that Mr. H announced his resignation. AR 3106. Mr. N▮ responded, recognizing that KPMG proposed Mr. H as one of its key personnel and asked Mr. ▮ "what the plan would be there." AR 3106. On January 24, 2022, Mr. ▮ responded, confirming Mr. H "felt the need to move on from ▮ and see another side of things" and would be leaving the CFSS II contract, and that KPMG would have "options on [Mr. H] for the follow-on contract if we are successful." AR 3107. Mr. N▮ replied, thanking Mr. ▮ for the update. AR 3107.

On January 25, 2022, NRO determined KPMG's proposal provided the best value to the Government. AR 3328–34. NRO summarized its findings on strengths, weaknesses, and overall risk evaluations for the three offerors in the following table:

| Criteria/Offeror | Sehlke Consulting | Deloitte | KPMG |
|---|---|---|---|
| **Non-Cost Area** | | | |
| **Management Item** | Satisfactory | Good | Very Good |
| Key Personnel Factor | Very Good | Very Good | Exceptional |
| Staffing Factor | Satisfactory | Good | Good |
| Management Approach Factor | Satisfactory | Satisfactory | Good |
| Transition Factor | Satisfactory | Very Good | Satisfactory |
| **Past Performance Item (Confidence)** | Significant | Significant | Significant |
| **OCI Item (Confidence)** | Moderate to High | High | Moderate to High |
| **Intellectual Property (IP) Item (Risk)** | Low | Low | Low |
| **Security Item (Risk)** | Low | Low | Low |
| **Cost** | | | |
| Proposed Cost | $33,583,825.62 | $32,421,887.45 | $35,077,526.45 |
| Reasonable | Yes | Yes | Yes |
| Realistic | Yes | Yes | Yes |
| Probable Cost | $33,583,825.62 | $32,421,887.45 | $35,077,526.45 |
| **Overall Proposal Risk** | Moderate-Low | Moderate | Moderate-Low |

AR 3118. According to NRO's source selection authority, the "final decision [was] essentially between KPMG (highest scoring) and Deloitte (lowest cost)," leaving Sehlke in third place. AR 3334. On January 27, 2022, KPMG was notified that it was selected for award. AR 3349. On January 28, 2022, Mr. H left ▮ and the CFSS II contract. AR 987. Shortly thereafter, he joined Deloitte as a Senior Manager. AR 987. On February 4, 2022, KPMG—then the awardee—proposed Mr. H's replacement to NRO. AR 3356–57. On February 8, 2022, NRO approved KPMG's proposed replacement. AR 3356.

### C.  GAO's Recommendation and NRO's Re-Evaluation

On February 15, 2022, Sehlke protested NRO's award to KPMG, arguing, *inter alia*, that NRO misevaluated KPMG's proposal regarding Mr. H's availability. AR 801–12. On May 18, 2022, GAO sustained Sehlke's protest on the grounds that NRO unreasonably concluded Mr. H was available to perform the CFSS III contract. AR 1000–09. In GAO's view, Mr. H "unambiguously resigned to take a position with a different firm, thereby making it clear that the individual would not be available to perform [the CFSS III contract]." AR 1007. GAO also reasoned that because CFSS III was not scheduled to begin until February 1—after Mr. H was scheduled to leave ▇—NRO could not reasonably ignore Mr. H's resignation notice "simply because [he] had not yet completed the final two weeks of employment when the agency made its selection decision." AR 1007. Consequently, GAO determined "it was unreasonable for the agency to base its evaluation on KPMG's offer of a senior financial consultant it had no realistic expectation would perform the contract[.]" AR 1006. GAO recommended that NRO either "evaluate KPMG's proposal as submitted, without considering the previously proposed and unavailable senior financial consultant [Mr. H]" or "open discussions with all offerors and allow for revised proposals." AR 1009.

Following GAO's recommendation, NRO decided to re-evaluate KPMG's proposal and determined that plaintiff's proposal was technically unacceptable for not meeting the solicitation's key personnel requirement. AR 3335. Specifically, on June 15, 2022, NRO determined that, based on GAO's finding that Mr. H was unavailable, "KPMG's proposal fails to meet the CFSS III solicitation key personnel requirements for Senior Financial Consultant," and, therefore, "KPMG has failed to comply with CFSS III proposal instructions and is eliminated from consideration for contract award." AR 3335. After eliminating KPMG, NRO reviewed Deloitte's and Sehlke's proposals and determined that Deloitte's was most advantageous to the Government. AR 3340–41. On June 16, 2022, NRO informed plaintiff that it was not selected for award and that Deloitte was the awardee. AR 3454–55, 3620–23.

### D.  Procedural History

On August 8, 2022, plaintiff filed its Complaint with this Court alleging NRO committed the following errors: (1) NRO unreasonably accepted GAO's recommendation because GAO's underlying decision was arbitrary; (2) NRO improperly required KPMG to update its proposal after Mr. H submitted his resignation letter; and (3) NRO improperly treated plaintiff and defendant-intervenor unequally. *See* Compl. at 23–27.

On August 29, 2022, defendant filed the Administrative Record. *See generally* AR. On September 16, 2022, KPMG filed its Motion for Judgment on the Administrative Record. *See generally* Pl.'s MJAR. On October 4, 2022, defendant and defendant-intervenor filed their respective Responses to Plaintiff's Motion for Judgment on the Administrative Record and their Cross-Motions. *See generally* Def.'s CMJAR; Def.-Int.'s CMJAR. On October 14, 2022, plaintiff filed its Reply and Response to defendant's and defendant-intervenor's Cross-Motions.

*See* Plaintiff's Response to Defendant's and Defendant-Intervenor's Motions for Judgement on the Administrative Record, ECF No. 30 [hereinafter Pl.'s Resp.]. On October 24, 2022, defendant and defendant-intervenor filed their respective Replies. *See generally* Defendant's Reply in Support of its Cross-Motion for Judgment on the Administrative Record, ECF No. 32 [hereinafter Def.'s Reply]; Defendant-Intervenor's Reply in Support of its Cross-Motion for Judgment on the Administrative Record, ECF No. 33 [hereinafter Def.-Int.'s Reply]. On December 22, 2022, the Court held Oral Argument. The parties' Motions are fully briefed and ripe for review.

## II.     Standard of Review

This Court's jurisdictional grant is found primarily in the Tucker Act, which gives this Court jurisdiction over bid protest actions. 28 U.S.C. § 1491(b). The Court evaluates bid protests under the Administrative Procedure Act's ("APA") standard of review for agency actions. *See* 28 U.S.C. § 1491(b)(4) (citing 5 U.S.C. § 706(2)(A)); *see also Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005) (citing *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)). Under the APA standard, agency procurement actions may be set aside only if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706 (incorporated in 28 U.S.C. § 1491(b)(4)).

In other words, "a bid award may be set aside if either: (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Impresa*, 238 F.3d at 1332 (citing *Kentron Hawaii, Ltd. v. Warner*, 480 F.2d 1166, 1169 (D.C. Cir. 1973)). Under the rational basis ground, the Court recognizes that "contracting officers are 'entitled to exercise discretion upon a broad range of issues confronting them' in the procurement process." *Id.* (quoting *Latecoere Int'l, Inc. v. United States Dep't of Navy*, 19 F.3d 1342, 1356 (11th Cir. 1994)). Accordingly, the test for courts is whether "the contracting agency provided a coherent and reasonable explanation of its exercise of discretion," and the protester has a "heavy burden" to show the award decision has no rational basis. *Id.* at 1333 (internal citations omitted). When a challenge is brought on the second ground, the protestor must show the alleged violation was "clear and prejudicial." *Id.* (citing *Kentron*, 480 F.2d at 1169).

Despite this exacting standard, the Court will find that an agency's decision is arbitrary and capricious when the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). "In conducting this inquiry, the court will look to see whether the agency has 'examin[ed] the relevant data and articulat[ed] a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'" *Cybertech Group, Inc. v. United*

*States*, 48 Fed. Cl. 638, 646 (2001) (internal quotation marks omitted) (quoting *Rainbow Navigation, Inc. v. Dep't of Navy*, 783 F.2d 1072, 1080 (D.C. Cir. 1986)).

The Federal Circuit "[has] upheld agency corrective actions taken on the basis of formal GAO determinations where the GAO determinations were rational." *Raytheon Co. v. United States*, 809 F.3d 590, 596 (Fed. Cir. 2015) (citing *Honeywell v. United States*, 870 F.2d 644, 647 (Fed. Cir. 1989)). "[A] procurement agency's decision to follow the Comptroller General's recommendation, even though that recommendation differed from the contracting officer's initial decision, was proper unless the Comptroller General's decision itself was irrational." *Honeywell*, 870 F.2d at 648. Therefore, evaluating an agency's decision based on a GAO decision requires scrutinizing whether the GAO's determination was rational. *See id.* In *CBY Design Builders v. United States*, this Court explained:

> When the relevant procurement official . . . decides to adopt the views of the GAO after a protest has been heard by that body, this agency decision is not considered inherently unreasonable (for departing from the agency's previous position) nor invulnerable (under the shield of GAO authority), *but is instead measured by the rationality of the recommendation it follows*. Instead of deferring to the initial agency decision, and re-reviewing the protest that was brought in the GAO by scrutinizing the rationality of the initial decision, we defer to the second agency decision, and *scrutinize the rationality of the GAO's resolution of the protest it heard*.

105 Fed. Cl. 303, 339 (2012) (emphasis added); *see also Centech Grp., Inc. v. United States*, 78 Fed. Cl. 496, 507 (2007) ("[T]o the extent that the agency relied upon GAO's decision as a basis for taking corrective action, GAO's decision is pivotal for the Court's review of the agency's procurement decision." (citing *Honeywell*, 870 F.2d at 648)); *Grunley Walsh Int'l, LLC v. United States*, 78 Fed. Cl. 35, 44 (2007) ("[A]n agency action is not insulated from meaningful review simply because the GAO recommended it.").

Pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims, a party may file a motion for judgment on the administrative record requesting that the Court assess whether an administrative body, given all disputed and undisputed facts in the record, acted in compliance with the legal standards governing the decision under review. *See Supreme Foodservice GmbH v. United States*, 109 Fed. Cl. 369, 382 (2013) (citing *Fort Carson Supp. Servs. v. United States*, 71 Fed. Cl. 571, 585 (2006)). On such a motion, the parties are limited to the administrative record, and the Court must make findings of fact as if it were conducting a trial on a paper record. R. Ct. Fed. Cl. 52.1; *Bannum*, 404 F.3d at 1354. The Court will then determine whether a party has met its burden of proof based on the evidence in the record. *Bannum*, 404 F.3d at 1355.

### III. Discussion

#### A. The Agency's Decision to Disqualify Plaintiff from its Re-Evaluation

The main question the Court must answer in this case is whether the Agency's actions in determining plaintiff's key personnel was unavailable—and therefore its proposal was technically unacceptable—was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *See* 5 U.S.C. § 706 (incorporated in 28 U.S.C. § 1491(b)(4)). On review of the record and for the reasons stated below, the Court finds that the Agency's evaluation based on the GAO's decision was arbitrary and capricious.

Plaintiff argues that NRO's decision to follow GAO's recommendation was arbitrary because GAO's recommendation was itself arbitrary and NRO had the discretion to address Mr. H's potential unavailability as a matter of contract administration. *See* Pl.'s MJAR at 14–24; Pl.'s Reply at 3–12. In response, defendant argues that NRO's decision to follow GAO's recommendation was reasonable because GAO's recommendation was rational. *See* Def.'s CMJAR at 16–28; Def.'s Reply at 2–6. Similarly, defendant-intervenor argues that NRO properly followed GAO's rational recommendation. *See* Def.-Int.'s CMJAR at 13–27; Def.-Int.'s Reply at 1–8.

First, the record supports that GAO's recommendation to NRO was irrational. GAO sustained Sehlke's protest on the grounds that Mr. H was unavailable; GAO rejected Sehlke's other arguments that NRO improperly evaluated KPMG's bid and that KPMG materially misrepresented Mr. H's availability. AR 1000–09. Justifying its recommendation, GAO stated that its decision "turns on the *uncontested facts* demonstrating that *the awardee and agency both knew the proposed key individual was unavailable* to perform in the key personnel role" and that there was "*no reasonable basis* for proceeding with an evaluation that KPMG would perform the contract as it had proposed." AR 1008 (emphasis added). Consequently, GAO recommended that NRO either "evaluate KPMG's proposal as submitted, without considering the previously proposed and unavailable senior financial consultant [Mr. H]" or "open discussions with all offerors and allow for revised proposals to be submitted." AR 1009. In this case, GAO irrationally concluded that Mr. H's employment status was a foregone conclusion.

Contrary to GAO's characterization of Mr. H's employment status as being "unambiguous"—that Mr. H would be unavailable to perform the contract— the record does not support that Mr. H would be unavailable to perform the contract prior to award. AR 1008. On September 30, 2021, at the time of final proposal submission, the record supports that KPMG had a reasonable belief, when it submitted its proposal, that it would deploy Mr. H as key personnel if awarded the contract. AR 1805, 1845–48; *Golden IT, LLC v. United States*, 157 Fed. Cl. 680, 705 (2022) ("[A]ll that is necessary here is that SFI had a reasonable belief, at the time of its quote, that SFI would deploy Mr. [JH] as key personnel upon contract award."). At that time, Mr. H was working for ▮▮▮▮ on the CFSS II contract as a senior manager and had provided KPMG a signed letter of intent to work on the CFSS III contract, if awarded to KPMG.

AR 1845–48, 1856. After proposal submission, on January 11, 2022, Mr. H notified ▇ that he planned to resign. AR 985. Three days later, ▇ notified KPMG of Mr. H's planned resignation. AR 983. KPMG and ▇ did not accept Mr. H's resignation as conclusive; they agreed to "'do everything they can' to change his mind." AR 983, ¶ 8 (Decl. of ▇).

On January 18, 2022, KPMG voluntarily notified NRO that Mr. H "turned in his two weeks to his company on [January 14, 2022]." AR 3106. NRO replied that KPMG proposed Mr. H as one of its key personnel and asked KPMG "what the plan would be there." AR 3106. On January 24, 2022, KPMG replied that they "have options on [Mr. H] for [CFSS III] if we are successful." AR 3107. On January 25, 2022, before Mr. H's departure, NRO determined that KPMG's proposal (including Mr. H as senior financial consultant) provided the best value to the Government. AR 3328–34 (Source Selection Decision Document). On January 27, 2022, also before Mr. H's departure, NRO awarded the CFSS III contract to KPMG. AR 3349. Mr. H was still employed by KPMG. AR 986. In fact, after learning that it won the contract, KPMG continued to try to convince Mr. H to stay:

> On January 27, 2022, I learned that KPMG had been awarded the CFSS III contract. I was hopeful that this news would cause [Mr. H] to reconsider his resignation and, on January 28, 2022, I asked [Mr. H] if he would reconsider in light of the award.

AR 986, ¶ 9 (Decl. of ▇).

On January 28, 2022, *after* NRO's award to KPMG, Mr. H left employment with plaintiff's subcontractor ▇ and therefore the CFSS II contract. AR 986. On February 4, 2022, KPMG proposed ▇ as Mr. H's replacement for the role of senior financial consultant for CFSS III. AR 3356. KPMG provided a resume for ▇ and informed NRO that "he meets or exceeds the experience and qualifications of our previously proposed resource [Mr. H]." AR 3357–69. On February 8, 2022, NRO approved KPMG's proposed replacement, stating that "the government concurs with the proposed candidate ▇ as Senior Financial Consultant in place of [Mr. H]." AR 3356.

The Agency's decision to adopt GAO's recommendation and deem Mr. H as "unavailable upon submission of a resignation notice" is irrational. AR 3335. The GAO's decision characterizes Mr. H's resignation as a "pending departure" rather than "prospective unavailability." AR 1006. However, the record does not support that his resignation had the "definitive nature" which GAO suggests is important when determining whether key personnel is in fact unavailable. AR 1006 (stating that "[w]hile we recognize that these prior decisions are inherently fact specific, one of the touchstones of these cases is the definitive nature of the key person's unavailability"). It is clear from the record that KPMG was communicating with Mr. H to "change his mind" and as of January 27, 2022, the date of award, Mr. H was still employed by ▇. AR 983, 986, 3106–07, 3349.

This Court has taken the position that key personnel become unavailable when they depart a bidder or join another employer. *See, e.g., Conley & Assocs., Inc. v. United States*, 142 Fed. Cl. 177, 183 (2019) (explaining that the key personnel was unavailable because the original awardee terminated the proposed key personnel five months before its final proposal); *Orion Int'l Techs. v. United States*, 66 Fed. Cl. 569, 575 (2005) (explaining that the key personnel was unavailable because they were hired by the government), *aff'd*, 185 F. App'x 966 (Fed. Cir. 2006); *Golden IT*, 157 Fed. Cl. at 692–93 (explaining that the key personnel was unavailable when they departed the awardee and joined a competitor). These cases demonstrate that, without more, key personnel are unavailable when they are, in fact, no longer working with their employer. To determine otherwise would create an untenable position for employers who often deal with employee turnover, or who happen to propose an employee that changes their mind, after award, in the natural course of business. *See* AR 983, ¶ 11–12 (Decl. of ▆▆▆▆▆▆▆▆▆▆) (stating that "employees who submit their notice of resignation occasionally change their minds and decide to stay at KPMG," including "a KPMG employee [working on CFSS II] who rescinded her notice of resignation on what otherwise would have been her last day of employment with KPMG").

Finally, while not determinative of the Court's reasoning, the Court also briefly notes the public policy implications of NRO's revised decision. NRO's decision to disqualify KPMG from its revised evaluation stems entirely from KPMG's voluntary decision to notify NRO that Mr. H planned to resign before he did, in fact, separate from ▆▆▆. As stated above, "an offeror is not obligated to notify an agency of the departure of key personnel post-proposal submission, absent an affirmative requirement to do so in the solicitation." *IAP Worldwide Servs., Inc. v. United States,* 159 Fed. Cl. 265, 300 (2022) (citing *Golden IT*, 157 Fed. Cl. at 703–05). Nothing in the CFSS III Solicitation required KPMG to inform NRO that Mr. H announced his plan to resign. Yet, KPMG demonstrated good and prudent behavior: namely, voluntarily informing the Agency about a possible future staffing issue and proposing a solution to help further the efficient administration of the contract. This Court recognizes the importance of contractors working with agencies and does not want to encourage contractors to "hide the ball" regarding its key personnel. Thus, concluding that a key personnel's *plan* to resign *post-award* renders them unavailable *at the time of award* is untenable and would give the whims of proposed key personnel outsized influence over government contract award decisions.

In any event, the Court concludes that the Agency's determination—which relied on GAO's irrational recommendation—was arbitrary, capricious, and contrary to law. The Court need not address plaintiff's remaining arguments.

### B. Injunctive Relief

Plaintiff argues that it is entitled to permanent injunctive relief. Pl.'s MJAR at 40. When analyzing whether a permanent injunction is proper, a court must analyze "(1) whether, as it must, the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to

the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief." *PGBA, LLC v. United States*, 389 F.3d 1219, 1228–29 (Fed. Cir. 2004) (citing *Amoco Prod. Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 546 n. 12 (1987)). KPMG has succeeded on the merits of the case, so the Court will analyze the remaining three factors in turn.

First, KPMG will suffer irreparable harm if this Court does not issue permanent injunctive relief. This Court has "repeatedly held that a protester suffers irreparable harm if it is deprived of the opportunity to compete fairly for a contract." *CW Gov't Travel, Inc. v. United States*, 110 Fed. Cl. 462, 494 (2013) (citing *CRAssociates, Inc. v. United States*, 95 Fed. Cl. 357, 390–91 (2010)). By arbitrarily reversing course and concluding that Mr. H was unavailable, NRO improperly disqualified KPMG from its revised evaluation, depriving it the opportunity to compete fairly for the CFSS III contract.

Second, the balance of hardships favors KPMG. "Under this factor, 'the court must consider whether the balance of hardships leans in the plaintiffs' favor,' requiring 'a consideration of the harm to the government and to the intervening defendant.'" *Serco Inc. v. United States*, 81 Fed. Cl. 463, 502 (2008) (quoting *Reilly's Wholesale Produce v. United States*, 73 Fed. Cl. 705, 715 (2006)). According to NRO's initial evaluation of KPMG, their bid provided the best value to the government. AR 3328–34. If KPMG is ultimately awarded the CFSS III contract after a proper re-evaluation, NRO would receive what it already deemed the best value. Furthermore, regarding a possible delay of performance, this Court has noted that "only in an exceptional case would [such delay] alone warrant a denial of injunctive relief, or the courts would never grant injunctive relief in bid protests." *CW Gov't Travel*, 110 Fed. Cl. at 495 (internal quotation marks omitted) (citing *Reilly's Wholesale Produce*, 73 Fed. Cl. at 715–16).

Finally, public interest favors injunctive relief in this case. "[T]he public interest in preserving the integrity and fairness of the procurement process is served by enjoining arbitrary or capricious agency action." *Bilfinger Berger AG Sede Secondaria Italiana v. United States*, 94 Fed. Cl. 389, 393 (2010).

## IV. Conclusion

For the reasons set forth above, plaintiff's MOTION for Judgment on the Administrative Record is hereby **GRANTED**. Defendant's and defendant-intervenor's CROSS-MOTIONS for Judgment on the Administrative Record are hereby **DENIED.**

**IT IS SO ORDERED.**

s/ *Loren A. Smith*
Loren A. Smith,
Senior Judge